# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

OHIO CASUALTY INSURANCE
COMPANY,

    Plaintiff,

v.                                        Case No. 17-637 MV/SCY

R3F GENERAL CONTRACTORS, et al.,

    Defendants.

## ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Magistrate Judge Steven Yarbrough's Proposed Findings and Recommended Disposition ("PFRD") recommending that Plaintiff's Motion for Default Judgment as to R3F General Contractors, LLC, be denied. Doc. 26. On May 31, 2018, Plaintiff filed objections to the PFRD (Doc. 27) and supplemental objections on June 5, 2018 (Doc. 28).[1] Having reviewed Plaintiff's objections, the Court adopts Magistrate Judge Yarbrough's factual findings but declines to adopt Magistrate Judge Yarbrough's recommendation that the Court deny Plaintiff's Motion. As explained below, the Court will GRANT Plaintiff's Motion for Default Judgment.

    **I.**    **Background**

As explained more fully in Magistrate Judge Yarbrough's PFRD, Plaintiff brought suit against Defendant R3F to recover losses it alleges it suffered due to Defendants' failure to

---

[1] Defendants Ruben and Maria Acosta also filed objections on June 19, 2018. The Court will not consider the Acosta Defendants' objections for two reasons. First, the Acosta Defendants' objections to the PFRD are untimely as they were due by June 6, 2018. Doc. 26. Second, the Acosta Defendants' filed no relevant objections to Magistrate Judge Yarbrough's PFRD. The Acosta Defendants' objections instead assert their individual defenses to Plaintiffs' claims and have no bearing on whether default judgment should be entered against Defendant R3F General Contractors.

perform its obligations pursuant to a construction contract with West Las Vegas Schools (WLVS). *Plaintiff's Complaint*, Doc. 1 at ¶ 6. Plaintiff alleges that following Defendant R3F's failure to perform its obligations under the contract, WLVS demanded that Plaintiff, as surety of the performance and payment bonds, undertake and perform Defendant R3F's obligations. Doc. 1 at ¶ 6.

Prior to the issuance of the bonds, Defendant R3F agreed to exonerate and indemnify Plaintiff from all loss costs, expenses, and attorneys' fees suffered in connection with any bonds issued by Plaintiff on behalf of Defendants. Doc. 1 at ¶ 11. Pursuant to that agreement, Plaintiff issued a written demand to Defendant R3F after it defaulted on its obligations under the construction contract but Defendant R3F rejected that demand. Doc. 1 at ¶ 18. Plaintiff alleges that Defendant R3F has failed to honor its obligation to indemnify, provide collateral, or otherwise exonerate Plaintiff pursuant to its obligations under the indemnity agreement. Doc. 1 at ¶ 20.

On June 13, 2017, Plaintiff filed suit against Defendant R3F and Ruben and Maria Acosta (Acosta Defendants). Doc. 1. The Acosta Defendants entered pro se appearances. No appearance was entered on behalf of Defendant R3F. On August 24, 2017, Plaintiff moved for a clerk's entry of default against Defendant R3F on August 24, 2017. Doc. 13. The clerk's entry of default was entered on August 25, 2017. Doc. 14. Plaintiff subsequently filed the instant Motion for default judgment on January 5, 2018. Doc. 16. Doc. 16. The Court referred the matter to Magistrate Judge Yarbrough on January 25, 2018. Doc. 19.

Magistrate Judge Yarbrough entered his PFRD on May 23, 2018. In the PFRD, Magistrate Judge Yarbrough recommended denying Plaintiff's Motion without prejudice pursuant to *Frow v. DeLaVega*, 82 U.S. 552 (10th Cir. 1872). *Frow* holds that default judgment

should not be entered against one defendant in multi-defendant cases when it is alleged that the defendants are jointly liable "until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." *See Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (citing 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2690, at 455-56 (1983)). Magistrate Judge Yarbrough found the rule applicable in this case because Plaintiff is alleging that Defendant R3F and the Acosta Defendants are jointly and severally liable for its losses as signatories to the indemnity agreement. Magistrate Judge Yarbrough accordingly recommended that the proper procedure was to deny Plaintiff's Motion with leave to re-file once the matter has been adjudicated as to all Defendants. Doc. 26 at 4, 6 (citing *Applied Capital, Inc. v. Gibson*, 05-98 JB/ACT, 2008 WL 5689322, *9 (D.N.M. Sept. 27, 2007) (unpublished) (stating that the "proper procedure is to enter default but not enter default judgment against the defaulter unless the plaintiff prevails against the appearing defendants[.]")).

Plaintiff raises three objections to Magistrate Judge Yarbrough's PFRD. Doc. 27. First, Plaintiff contends that the *Frow* rule is inapplicable here because the matter will not be adjudicated against the Acosta Defendants because they have been discharged in bankruptcy. Second, Plaintiff contends that the *Frow* rule is inapplicable because Defendant R3F does not share a common defense with the Acosta Defendants. Third, Plaintiff contends that the Court should join with other circuits and no longer apply the *Frow* rule.

**II.     Analysis**

The Court will begin with Plaintiffs' second and third objections. As for Plaintiffs' second objection, the fact that Defendant R3F and the Acosta Defendants do not share a common defense does not render the *Frow* rule inapplicable. As Magistrate Judge Yarbrough explained, the main point of *Frow* is that default judgment should not be entered in multi-defendant cases in

which it is alleged that the defendants are jointly liable until the matter has been adjudicated as to all the defendants. *See* PFRD, Doc. 26 at 4. The Tenth Circuit's decision to *extend* this general rule to include instances in which the defendants may not be alleged to be jointly liable but instead have "closely related defenses" does not mean the general rule is no longer applicable. *Id*. In the present case, Plaintiff alleged that Defendant R3F and the Acosta Defendants are liable "jointly and severally." Doc. 1 at 7. Accordingly, the *Frow* rule is applicable regardless of whether there is a separate finding that the Defendants have closely related defenses.

As for Plaintiffs' third objection, the fact that other circuits do not follow *Frow* is immaterial. The Court is bound to follow Tenth Circuit precedent. Magistrate Judge Yarbrough raised and considered this argument in the PFRD and appropriately concluded that the Tenth Circuit, as well as courts in this district, continue to apply *Frow*.

With those two objections aside, Plaintiff's first objection presents a more complicated issue. Plaintiff contends that the Court should enter default judgment because there will be no trial on the merits against the Acosta Defendants as their liabilities have been discharged in bankruptcy. Doc. 27 at 5; Doc. 27-2. Plaintiff accordingly argues that there is no longer the risk of an inconsistent judgment. *See Wilcox v. Raintree Inns of America, Inc.*, 76 F.3d 394, 1996 WL 48857, *3 (Feb. 2, 1996 (unpublished) (stating that the "key aim of the [*Frow*] rule is the avoidance of inconsistent judgments.").

The current posture of this case is somewhat similar to that in *Hartford Fire Ins. Co. v. Vista Contracting, Inc.*, Civ. No. 16-285, 2016 WL 6892730 (D.D.C. Nov. 22, 2016). The plaintiff in *Hartford* underwrote surety bonds on behalf of defendant Vista Contracting and defendants Stjepan and Nancy Sostaric signed indemnity agreements in exchange for issuance of the bonds. *Id.* at *1. Defendants ultimately defaulted on their obligations under the bonds and

plaintiff filed suit. *Id.* Like the present case, only the individual defendants entered appearances in the lawsuit. Plaintiff thereafter moved for default judgment against defendant Vista Contracting based on its failure to appear and defend. *Id.* at *2. The court ultimately entered default judgment against Vista Contracting despite *Frow* based on an implicit determination that the claims against the defendants were severable.

Like Hartford, the parties' potential liabilities in this case, although initially pled as joint, are severable because the Acosta Defendants' potential liabilities have been discharged in bankruptcy. Under these circumstances, the Court agrees that the interests sought to be protected by *Frow* rule are no longer applicable. That is, default judgment can be entered against Defendant R3F without prejudice to the Acosta Defendants as their liabilities have been discharged. The Court will accordingly enter default judgment against Defendant R3F.

Federal Rule of Civil Procedure 55 sets out a two-step process for a party seeking a default judgment. A party seeking such a judgment must first obtain the clerk's entry of default against the opposing party. Fed. R. Civ. P. 55(a). *See Garrett v. Seymour*, 217 Fed. App'x. 835, *2 (10th Cir. 2007) (stating that the clerk's entry of default is a prerequisite for obtaining a default judgment under Fed. R. Civ. P 55(b)). The clerk will issue an entry of default when the moving party shows the Court through an affidavit or otherwise that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P 55(a). The clerk's entry of default in this case was entered on August 25, 2017. Doc. 14. Second, the party must move the Court to enter a default judgment. Fed. R. Civ. P. 55(b). The trial court is given broad discretion in deciding to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

Once a defendant has defaulted, the district court takes all of the well-pled facts in a complaint as true, *see U.S. v. Craighead*, 176 Fed App'x 922, 924 (10th Cir. 2006)

(unpublished), and determines whether Plaintiff stated a claim for relief.  As for damages, the Court may enter a default judgment for a damage award without a hearing if the amount claimed is "one capable of mathematical calculation." *Applied Capital, Inc. v. Gibson*, 558 F.Supp.2d 1189, 1202 (D.N.M. 2007) (internal quotation marks omitted).  Conversely, "[i]f the damages sum is not certain or capable of easy computation" the Court may be required to conduct an evidentiary hearing.  *Id.*

The Court concludes that it has jurisdiction over the parties and issues in this case pursuant to 28 U.S.C. § 1332.  Taking Plaintiff's well-pled facts as true, the Court further concludes that Plaintiff has stated a claim for relief.  Defendant R3F entered into an agreement with WLVS to perform demolition and renovation to the West Las Vegas Pre-Head Start School.  Plaintiff, as surety, and R3F, as principal, furnished to WLVS a Performance Bond and Payment bond in the penal sum of $274,523.  Doc. 1 at ¶ 6. On December 8, 2016, WLVS formally placed R3F on notice that it was in default under the contract and demanded that Defendant R3F return and continue work on the project. Doc. 1 at ¶ 7.  Defendant R3F failed to perform its obligations under the contract and abandoned the project. Doc. 1 at ¶ 7.  WLVS accordingly notified Plaintiff that it had placed Defendant R3F in default and terminated the contract. Doc. 1 at ¶ 8.  Following termination of the contract, WLVS made claims against Plaintiff under the Performance Bond demanding that it undertake and perform the obligations of Defendant R3F under the contract. Doc. 1 at ¶ 9.  Plaintiff thereafter entered into a written agreement with WLVS whereby it paid WLVS the principal sum of $240,100.84 in order to satisfy Defendant R3F's obligations. Doc. 1 at ¶ 10; Doc.16-1.

In order to secure the Performance and Payment Bonds, Defendant R3F entered into an indemnity agreement with Plaintiff. Doc. 1 at ¶ 11; Doc. 16-2.  Pursuant to the indemnity

agreement, Defendant R3F promised to exonerate and indemnify Plaintiff from all loss costs, expenses, and attorneys' fees in connection with the issuance of the bonds. Doc. 1 at ¶ 11; Doc. 16-2. On approximately January 13, 2017, Plaintiff issued a written demand to Defendant R3F for the amount of $175,000. Doc. 1 at ¶ 18. Defendant R3F refused the demand and, to date, has not honored its obligation to indemnify Plaintiff. Doc. 1 at ¶¶ 18-20.

Plaintiff represents that its damages are $284,208.38. Of that amount, $240,100.84 represents Plaintiff's payment to WLVS (Doc. 16 at 4), $37,273.02 represents Plaintiff's attorneys' fees (Doc. 16-3), and $6,834.52 represents consultants' fees and expenses (Doc. 16-3). Doc. 16 at 4. Because Plaintiff requests a sum certain capable of mathematical calculation for its damages, the Court concludes that an evidentiary hearing is unnecessary. The Court will accordingly award Plaintiff its requested damages amount of $284,208.38.

Plaintiff further requests post-judgment interest in the amount of 8.75% per annum pursuant to NMSA 1978, § 56-8-4. When the Court's jurisdiction is based on diversity, as it is here, state law controls the issue of post-judgment interest. *See Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1077-79 (10th Cir. 2002). Section 56-8-4(A) provides for post-judgment interest at the rate requested by Plaintiff and such award is mandatory. *See Martinez v. Pojoaque Gaming, Inc.*, 2011-NMCA-103, ¶ 24, 264 P.3d 725. The Court will accordingly award Plaintiff post-judgment interest to be calculated at 8.75% per annum.

### III. Conclusion

For the foregoing reasons, the Court adopts Magistrate Judge Yarbrough's factual findings but declines to adopt Magistrate Judge Yarbrough's recommendation to deny Plaintiff's Motion for Default Judgment (Doc. 26). The Court therefore GRANTS Plaintiff's Motion for

Default Judgment against Defendant R3F (Doc. 16). The Court awards Plaintiff $284,208.38 and post-judgment interest in the amount of 8.75% per annum.

_____
UNITED STATES DISTRICT JUDGE